UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA J. D.,[1]<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>KILOLO KIJAKAZI,<br>Acting Commissioner of Social Security,<br><br>　　　　　　Defendant. | Case No. 5:20-cv-2573-MAR<br><br>MEMORANDUM AND ORDER |

　　　　Plaintiff Pamela J. D. ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration ("Commissioner" or "Agency") denying her application for Title II Disability Insurance Benefits ("DIB"). The parties have consented to the jurisdiction of the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

　　　　For the reasons stated below, the Commissioner's decision is **REVERSED**, and this action is **REMANDED** for further proceedings consistent with this Order.

///

///

---

[1] Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

I.

**PROCEDURAL HISTORY**

On July 18, 2018, Plaintiff protectively filed her application for DIB alleging a disability onset date of May 17, 2012. Administrative Record ("AR") at 15, 146–47. After the application was denied initially and upon reconsideration, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Id. at 58, 65, 82–83. On April 28, 2020, Plaintiff, represented by counsel, and a vocational expert ("VE") testified telephonically[2] at a hearing before the assigned ALJ. Id. at 15, 30–52. On May 13, 2020, the ALJ issued a decision denying the application. Id. at 15–24. Plaintiff filed a request with the Agency's Appeals Council to review the ALJ's decision, which the Council denied on July 23, 2020. Id. at 1–6, 142–45.

On December 14, 2020, Plaintiff filed the instant action. ECF Docket No. ("Dkt.") 1. This matter is before the Court on the Parties' cross-motions for summary judgment, filed on July 23, 2021, and August 19, 2021. Dkt. 15–16.

II.

**PLAINTIFF'S BACKGROUND**

Plaintiff was fifty (50) years old on the alleged disability onset date and almost fifty-eight (58) at the time of the administrative hearing.[3] AR at 49–50, 53, 59. Plaintiff has some college and a work history that spanned from 1978 to 2012, which included serving as an office clerk for a portable toilet rental and service company and as a manager for a restaurant. Id. at 22–23, 149–51, 156–57, 165, 174–76, 230, 282, 289–90, 292, 396. She alleges disability based on: (1) osteoarthritis; (2) scoliosis;

---

[2] The hearing was conducted telephonically due to the Coronavirus Disease of 2019 ("COVID-19") pandemic. AR 15, 31, 141.

[3] Accordingly, under Agency regulations, Plaintiff was considered a person "closely approaching advanced age" on the alleged onset date, and a person "of advanced age" by the time of the hearing. AR at 53, 59; see Lockwood v. Comm'r Soc. Sec. Admin., 616 F.3d 1068, 1069 (9th Cir. 2010) (explaining that social security regulations define "persons closely approaching advanced age" as "age 50–54" and "persons of advanced age as "55 or older").

(3) ulcerative colitis; (4) mixed hyperlipidemia; (5) major depressive disorder; and (6) anxiety. Id. at 20, 54, 56, 60, 163.

### III.
### **STANDARD FOR EVALUATING DISABILITY**

To qualify for benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents her from engaging in substantial gainful activity, and that is expected to result in death or to last for a continuous period of at least twelve (12) months. 42 U.S.C. § 423 (d)(1)(a); Reddick v. Chater, 157 F.3d 715, 721 (9th Cir. 1998). The impairment must render the claimant incapable of performing the work she previously performed and incapable of performing any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 423(d)(2)(A); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).

To decide if a claimant is disabled, and therefore entitled to benefits, an ALJ conducts a five-step inquiry. Ford v. Saul, 950 F.3d 1141, 1148–49 (9th Cir. 2020); 20 C.F.R. § 404.1520. The steps are:

(1) Is the claimant presently engaged in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.

(2) Is the claimant's impairment severe? If not, the claimant is found not disabled. If so, proceed to step three.

(3) Does the claimant's impairment meet or equal one of the specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is found disabled. If not, proceed to step four.[4]

(4) Is the claimant capable of performing work she has done in the past? If so, the claimant is found not disabled. If not, proceed to step five.

---

[4] "Between steps three and four, the ALJ must, as an intermediate step, assess the claimant's [residual functional capacity]," or ability to work after accounting for her verifiable impairments. Bray v. Comm'r of Soc. Sec. Admin., 554 F.3d 1219, 1222–23 (9th Cir. 2009) (citing 20 C.F.R. § 416.920(e)). In determining a claimant's residual functional capacity, an ALJ must consider all relevant evidence in the record. Robbins v. Soc. Sec. Admin., 466 F.3d 880, 883 (9th Cir. 2006).

(5) Is the claimant able to do any other work? If not, the claimant is found disabled. If so, the claimant is found not disabled.

See Tackett, 180 F.3d at 1098–99; see also 20 C.F.R. § 404.1520(b)–(g)(1); Bustamante v. Massanari, 262 F.3d 949, 953–54 (9th Cir. 2001).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five. Ford, 950 F.3d at 1148; Bustamante, 262 F.3d at 953–54. Additionally, the ALJ has an affirmative duty to assist the claimant in developing the record at every step of the inquiry. Id. at 954. If, at step four, the claimant meets her burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"), age, education, and work experience. 20 C.F.R. § 404.1520(g)(1); Tackett, 180 F.3d at 1098–99, 1100; Reddick, 157 F.3d at 721.

## IV.
## THE ALJ'S DECISION

**A.     STEP ONE**

At step one, the ALJ found Plaintiff did not "engage in substantial gainful activity during the period from her alleged onset date of May 17, 2012 through her date last insured of December 31, 2017[.]" AR at 17.

**B.     STEP TWO**

At step two, the ALJ found Plaintiff had "the following severe impairments: colitis; bipolar disorder; depression; and anxiety[.]" Id. at 17–18.

**C.     STEP THREE**

At step three, the ALJ found Plaintiff did not "have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1[.]" Id. at 18.

///

4

## D. RFC DETERMINATION

The ALJ found Plaintiff, through the date last insured, had the RFC to perform a full range of work at all exertional levels[5] but with the following nonexertional limitations: "she could understand, remember, and carry out simple, routine tasks in a routine, low stress work setting involving few workplace changes and no rapid pace assembly line work." Id. at 19.

## E. STEP FOUR

At step four, the ALJ found Plaintiff was unable to perform her past relevant work as an office clerk, as defined in the Dictionary of Occupational Titles ("DOT"). Id. at 22–23.

## F. STEP FIVE

At step five, the ALJ found that "[c]onsidering [Plaintiff]'s age, education, work experience, and [RFC], there were jobs that existed in significant numbers in the national economy that [Plaintiff] could have performed." Id. at 23. With the assistance of the VE's testimony, the ALJ found that Plaintiff would be able to perform occupations such as cleaner, greeter, and laundry worker. Id. at 23–24. Accordingly, the ALJ concluded she "was not under a disability, as defined in the Social Security Act, at any time from May 17, 2012, the alleged onset date, through December 31, 2017, the date last insured[.]" Id. at 24.

## V.

## PLAINTIFF'S CLAIMS

Plaintiff presents two (2) disputed issues, reordered as whether the ALJ: (1) properly evaluated Plaintiff's subjective complaints, and (2) erred at steps two and

---

[5] See Mary R. v. Comm'r Soc. Sec., 2021 WL 1997494, at *5 (W.D. Wash. May 19, 2021) (interpreting RFC that claimant could perform work at "all exertional levels" as including "very heavy work, which involves lifting over 100 pounds"); Salgado v. Astrue, 2011 WL 717251, at *5 (C.D. Cal. Feb. 22, 2011) ("An individual capable of performing very heavy work is also capable of performing heavy, medium, light and sedentary work[.]").

5

five by failing to properly evaluate medical evidence, including medical opinion evidence. Dkt. 15 at 3, 7.

## VI.
## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The ALJ's findings and decision should be upheld if they are free of legal error and supported by substantial evidence based on the record as a whole. Richardson v. Perales, 402 U.S. 389, 401 (1971); Parra v. Astrue, 481 F.3d 742, 746 (9th Cir. 2007).

"Substantial evidence" is evidence that a reasonable person might accept as adequate to support a conclusion. Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006)). It is more than a scintilla but less than a preponderance. Id. To determine whether substantial evidence supports a finding, the reviewing court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." Reddick, 157 F.3d at 720; see also Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012) ("[A] reviewing court . . . may not affirm simply by isolating a 'specific quantum of supporting evidence'" (quoting Robbins, 466 F.3d at 882)). "If the evidence can reasonably support either affirming or reversing," the reviewing court "may not substitute its judgment" for that of the Commissioner. Reddick, 157 F.3d at 720–21; see also Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012) ("Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record."), superseded by regulation on other grounds as stated in Thomas v. Saul, 830 F. App'x 196, 198 (9th Cir. 2020).

The reviewing court may review only the reasons stated by the ALJ in his decision "and may not affirm the ALJ on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007). If the ALJ erred, the error may only be

6

considered harmless if it is "clear from the record" that the error was "inconsequential to the ultimate nondisability determination." Robbins, 466 F.3d at 885 (citation omitted).

## VII.
## **DISCUSSION**

### A. THE ALJ FAILED TO PROVIDE SUFFICIENT REASONS FOR DISCOUNTING PLAINTIFF'S SUBJECTIVE COMPLAINTS

#### 1. Relevant facts and decision

##### a. Plaintiff's subjective complaints

During the April 2020 telephonic hearing before the ALJ, Plaintiff testified about the various conditions she alleges preclude her from work. She has abdominal pain and colitis that are exasperated by eating, stress, and physical activity. AR at 41–42, 46. For example, if she eats a salad, she will have to use the restroom within five minutes. Id. at 41. As an example of a stressful situation that worsens her condition, she explained that if she goes to the grocery store, she might have a panic attack to a degree that she "can't function." Id. Finally, physical activity causes cramping and bloating gas. Id. at 46. If this happens, she must lay down and "curl up in a ball" to stop the pain. Id.

When she first experienced colitis, she would "run[] to the restroom every five (5) to ten (10) minutes. Id. at 44. Now, she has to go at least every fifteen (15) to twenty (20) minutes, but it varies. Id. In 2017 she would have to go about once an hour. Id. at 45. Compounding this, sometimes she feels the urge to relieve herself, but she doesn't end up doing so. Id. Her restroom breaks typically take five (5) to ten (10) minutes. Id.

She also has low back pain and sciatica on her left side. Id. at 42. She stated that she's always had problems with her lower back because her "tailbone is a 360 and [her] neck is backwards." Id. Her back pain has worsened over the years. Id. She believes this is due to taking Prednisone and pills, which she said hasn't helped. Id.

7

She took Prednisone for eight months. Id. But she stopped taking it after she read the medication warning indicating the drug should not be used for longer than four (4) months. Id. She thinks Prednisone caused her stroke in 2007. Id. In 2012, she had another stroke, which was confirmed by a neurologist. Id. at 43. The strokes caused long-term effects on her ability to talk, listen, and remember what she's saying. Id. at 44. She explained: "I just stop right in the middle of the sentence and I can't remember what I was saying." Id.

Further, if Plaintiff is out in the sun, she burns easily and "blow[s] up like the Michelin Man." Id. at 45–56. She will "get red," and even "get burnt through [her] clothes." Id. at 46. She also has knee and hip pain, which can get so severe she "can't move" and she must lay down. Id. at 48.

Plaintiff lives with her husband. Id. at 47. Plaintiff does what she can around the house, but she forgets what she's doing and has to lay down. Id. So, her husband and friends "have to do everything at home." Id. at 47–48.

For treatment, she has been seeing Dr. Oderi[6] since 2006 for her ulcerative colitis. Id. at 47. For her mental health, she sees a psychologist or a psychiatrist. Id. She takes Norco and aspirin for pain. Id. at 48. She also takes Colazal and Protonix for colitis. AR 49. In addition, she takes Lomotil. Id. at 49.

### b. ALJ's decision

The ALJ rejected Plaintiff's subjective complaints because Plaintiff's: (1) treatment was routine and conservative; (2) medication was generally successful at controlling symptoms; and (3) allegations were not substantiated by the objective medical evidence. Id. at 20–21.

///

///

---

[6] The doctor's name is spelled phonetically in the transcript. AR at 47. It appears Plaintiff was referencing Dr. Thomas Oliveira. See AR at 205, 212, 214, 231–32, 393, 551–62, 571–81.

**2. Applicable law[7]**

When a claimant produces objective medical evidence of an impairment that could reasonably be expected to produce the pain or other symptoms alleged, absent evidence of malingering, "the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020) (citations and internal quotation marks omitted); Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004). "The ALJ must state specifically which symptom testimony is [discounted] and what facts in the record lead to that conclusion." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996); see also Brown-Hunter v. Colvin, 806 F.3d 487, 489 (9th Cir. 2015) (holding "an ALJ does not provide specific, clear, and convincing reasons for rejecting a claimant's testimony by simply reciting the medical evidence in support of his or her [RFC]").

"If the ALJ's . . . finding is supported by substantial evidence, [a court] may not engage in second-guessing." Thomas v. Barnhart, 278 F.3d 947, 959 (9th Cir. 2002). However, an ALJ's failure to give specific, clear, and convincing reasons to reject the claimant's testimony regarding the severity of the symptoms is not harmless, because it precludes the Court from conducting a meaningful review of the ALJ's reasoning. Brown-Hunter, 806 F.3d at 489. Moreover, as mentioned, a court must "review only

---

[7] Before the ALJ's decision, Social Security Ruling ("SSR") 16-3p went into effect. See SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). SSR 16-3p provides that "we are eliminating the use of the term 'credibility' from our sub-regulatory policy, as our regulations do not use this term." Id. Moreover, "[i]n doing so, we clarify that subjective symptom evaluation is not an examination of an individual's character" and requires that the ALJ consider all of the evidence in an individual's record when evaluating the intensity and persistence of symptoms. Id.; see also Trevizo v. Berryhill, 871 F.3d 664, 678 n.5 (9th Cir. 2017) (as amended). Thus, the adjudicator "will not assess an individual's overall character or truthfulness in the manner typically used during an adversarial court litigation. The focus of the evaluation of an individual's symptoms should not be to determine whether he or she is a truthful person." SSR 16-3p, 2016 WL 1119029, at *10. SSR 16-3p's elimination of the word "credibility" from the Agency's subjective-symptom evaluation "does not, however, alter the standards by which courts will evaluate an ALJ's reasons for discounting a claimant's testimony." Elizabeth B. v. Comm'r Soc. Sec., 2020 WL 1041498, at *3 (W.D. Wash. Mar. 4, 2020); see also R.P. v. Colvin, 2016 WL 7042259, at *9 n.7 (E.D. Cal. Dec. 5, 2016) (stating SSR 16-3p "implemented a change in dictation rather than substance").

9

the reasons provided by the ALJ in the disability determination and may not affirm the ALJ on a ground upon which [s]he did not rely." Orn, 495 F.3d at 630.  Courts, therefore, may not speculate as to the basis for unexplained conclusions but, rather, must only consider the reasoning actually given by the ALJ.  See Burrell v. Colvin, 775 F.3d 1133, 1138 (9th Cir. 2014) ("We are constrained to review the reasons the ALJ asserts . . . [and] may not take a general finding . . . and comb the [AR] to find specific conflicts." (citation omitted)).

### 3. Analysis

As discussed below, none of the ALJ's purported reasons constitute "specific, clear and convincing reasons" for rejecting Plaintiff's subjective complaints.

#### a. Treatment

The ALJ discounted Plaintiff's testimony because she had "not generally received the type of medical treatment one would expect for a totally disabled individual."  AR 21.  He further explained that Plaintiff's treatment has been "essentially routine and conservative in nature" and that the "lack of more aggressive treatment suggests [Plaintiff]'s symptoms and limitations were not as severe as she alleged."  Id. at 21–22.  This is insufficient for three (3) main reasons.

First, the reason does not meet the specificity requirement.  The ALJ's findings "must be sufficiently specific to allow a reviewing court to conclude that the [ALJ] rejected [the] claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony."  Moisa, 367 F.3d at 885 (citation omitted).  Here, the ALJ was silent as to which aspect Plaintiff's treatment he found routine and conservative.  Accordingly, as it is stated, the ALJ's finding is insufficient.  See Lambert, 980 F.3d at 1277 ("We cannot review whether the ALJ provided specific, clear, and convincing reasons for rejecting . . . testimony where, as here, the ALJ never identified which testimony she found not credible, and never explained which evidence contradicted that testimony.") (citation and internal quotation marks omitted, emphasis in original); Brown-Hunter, 806 F.3d at 492 (federal courts

"demand that the agency set forth the reasoning behind its decisions in a way that allows for meaningful review").

Second, even assuming the ALJ was referring to Plaintiff's medicinal treatment, as it served as the bulk of her care, that treatment does not appear conservative. Throughout the relevant period Plaintiff's drug regimen included at least twenty (20) different medications: citalopram,[8] clonazepam,[9] Colazal (balsalazide),[10] Depakote (divalproex),[11] Flexiril (cyclobenzaprine),[12] gabapentin,[13] Lexapro (escitalopram),[14]

---

[8] "Citalopram is in a class of antidepressants called selective serotonin reuptake inhibitors (SSRIs). It is thought to work by increasing the amount of serotonin, a natural substance in the brain that helps maintain mental balance." Dorris v. Colvin, 2015 WL 3970481, at *2 n.4 (C.D. Cal. June 29, 2015) (internal quotation marks and citation omitted).

[9] "Clonazepam is a benzodiazepine prescribed to control certain types of seizures and to relieve panic attacks." Gomez v. Saul, 2019 WL 5721659, at *4 n.11 (E.D. Cal. Nov. 5, 2019). It "tends to cause drowsiness, and, in higher dosages, might cause weakness, imbalance, and sedation to the point of being unable to be aroused or to have breathing difficulties." Lehmann v. Beard, 2018 WL 2283740, at *4 (C.D. Cal. Apr. 4, 2018).

[10] Colazal (balsalazide) "is an anti-inflammatory drug used to treat ulcerative colitis, a condition in which the bowel is inflamed. . .. It is converted in the body to mesalamine and works by reducing bowel inflammation, diarrhea, rectal bleeding, and stomach pain." Davidson v. Astrue, 2011 WL 4498836, at *3 & n.1 (D. Or. Sept. 27, 2011) (internal quotation marks and citation omitted).

[11] "Depakote is the brand named for divalproex sodium. It is an [a]nticonvulsant available orally, [u]seful for absence, myoclonic, partial and tonic-clonic seizures; treats bipolar disorder and agitation secondary to dementia. Close monitoring for emerging or worsening suicidal thoughts/behavior or depression is recommended." Arellano v. Santos, 2020 WL 1275650, at *5 n.4 (S.D. Cal. Mar. 16, 2020) (internal quotation marks and citation omitted).

[12] "Cyclobenzaprine is a skeletal muscle relaxant used to relieve pain and discomfort." Schoor-Haddad v. Berryhill, 2017 WL 6389669, at *5 n.10 (C.D. Cal. Dec. 13, 2017).

[13] "Gabapentin is a medication that was originally developed to treat seizure disorders such as epilepsy. It is also used to treat neuropathic pain. Neuropathic pain is pain from inflamed or damaged nerves." Escobar v. Smith, 2013 WL 6389034, at *5 (E.D. Cal. Dec. 6, 2013). "Prescriptions must also be [m]onitor[ed] for emerging or worsening suicidal thoughts or actions and/or depression." Arellano, 2020 WL 1275650, at *5 n.4 (internal quotation marks and citation omitted).

[14] "Lexapro is name-brand escitalopram oxalate, which is used to treat depression and anxiety by helping to restore the balance of serotonin in the brain." Apr. J. M v. Saul, 2021 WL 598190, at *5 n.2 (C.D. Cal. Feb. 16, 2021) (internal quotation marks and citation omitted).

11

Lialda,[15] Lomotil,[16] loratadine,[17] meloxicam,[18] mercaptopurine,[19] Norco,[20] Pristiq (desvenlafaxine),[21] promethazine,[22] Protonix,[23] Prozac,[24] Wellbutrin,[25] Xanax,[26] and Zoloft.[27] AR at 47–49, 286–87, 289, 291–93, 301, 308, 314, 321, 323, 325, 327, 356–57, 359, 362–63, 366–69, 371, 395, 398, 400–01, 403–04, 406, 408–10, 412–14, 417, 420, 469–70, 484, 486, 492, 494–95, 497, 499, 502, 520–22, 527–28, 531–35, 551–53.

---

[15] Lialda "helps to reduce symptoms of ulcerative colitis such as diarrhea, rectal bleeding, and stomach pain. [. . .] It works by decreasing swelling in the colon. See Lialda, WebMD, https://www.webmd.com/drugs/2/drug-147055/lialda-oral/details (last visited Sept. 28, 2021).

[16] "Lomotil (atropine and diphenoxylant) is an antidiarrheal medication." King v. Colvin, 2015 WL 1870755, at *2 (N.D. Cal. Apr. 23, 2015) (citation omitted).

[17] "Loratadine is an antihistamine used to treat allergy symptoms and allergic skin disorders." Guillen v. Thompson, 2009 WL 2513494, at *2 n.6 (D. Ariz. Aug. 14, 2009).

[18] "Meloxicam is a nonsteroidal anti-inflammatory that reduces pain, swelling, and stiffness of the joints." Trejo v. Berryhill, 2018 WL 3602380, at *9 n.29 (C.D. Cal. July 25, 2018) (citation omitted).

[19] Mercaptopurine is used "for the remission induction and maintenance therapy of acute lymphatic leukemia." Wendell v. Johnson & Johnson, 2010 WL 2465456, at *1 (N.D. Cal. June 14, 2010) (citation omitted). It can also be used to treat inflammatory bowel disease and ulcerative colitis. Id.; see also Mercaptopurine, Medline Plus, https://medlineplus.gov/druginfo/meds/a682653.html (last visited Sept. 28, 2021).

[20] "Norco is an opioid-based medication for treating moderate to severe pain, consisting of hydrocodone and acetaminophen." Barbara A. v. Saul, 2021 WL 1110288, at *3 (C.D. Cal. Mar. 23, 2021).

[21] Pristiq (desvenlafaxine) "is used to treat depression. [. . .] It works by helping to restore the balance of certain natural substances (serotonin and norepinephrine) in the brain." See Pristiq, WebMD, https://www.webmd.com/drugs/2/drug-150251/pristiq-oral/details (last visited Sept. 28, 2021).

[22] "The generic drug promethazine is an antihistamine that is used to relieve or prevent the symptoms of hay fever, allergic conjunctivitis (inflammation of the eye), and other types of allergy or allergic reactions[.] Promethazine is also used to prevent and control motion sickness, nausea, vomiting, and dizziness. In addition, it may be used to help people go to sleep and control their pain or anxiety before or after surgery or other procedures." Alcala v. Colvin, 2013 WL 1620352, at *4 n.7 (C.D. Cal. Apr. 15, 2013).

[23] "Protonix is a proton pump inhibitor . . . used to block gastric acid production." Javier A. G. v. Saul, 2020 WL 6940042, at *4 n.6 (C.D. Cal. Nov. 25, 2020) (citation omitted).

[24] "Prozac (fluoxetine) is a selective serotonin reuptake inhibitor used to treat major depressive disorder and OCD." Viera v. Berryhill, 2019 WL 2396311, at *2 (C.D. Cal. June 6, 2019).

[25] "Wellbutrin is an antidepressant used to treat major depressive disorder and seasonal affective disorder." Goodman v. Berryhill, 2017 WL 1365122, at *3 n.5 (N.D. Cal. Apr. 14, 2017).

[26] "Xanax (Alprazolam) is used to treat anxiety disorders and panic disorder by decreasing abnormal excitement in the brain[.]" Boyles v. Colvin, 2016 WL 5660380, at *4 (D. Alaska Sept. 29, 2016).

[27] "Sertraline HCI (Zoloft) is used to treat depression, OCD, panic attacks, post-traumatic stress disorder, and social anxiety disorder." Alvarado v. Berryhill, 2017 WL 3730830, at *4 n.3 (C.D. Cal. Aug. 29, 2017).

Much of these drugs, as noted, are strong psychotropic medications. While not all were prescribed at the same time, many were, and courts have repeatedly rejected the classification of mental health treatment as "conservative" when a clamant has been prescribed multiple psychiatric drugs. See Drawn v. Berryhill, 728 F. App'x 637, 642 (9th Cir. 2018) (rejecting characterization of treatment as conservative where claimant was taking "a number of psychiatric medications"); Childress v. Colvin, 2015 WL 2380872, at *14 (C.D. Cal. May 18, 2015) (treatment including years of therapy, prescription antidepressants, including citalopram, and prescription antipsychotics, not properly characterized as conservative treatment); Carden v. Colvin, 2014 WL 839111, at *2 (C.D. Cal. Mar. 4, 2014) (collecting cases).

Third, and finally, the ALJ improperly faulted Plaintiff for the lack of "more aggressive treatment." AR 21. As Plaintiff points out, neither the ALJ nor the Commissioner proffered alternative treatment she should have sought for her mental and related physical conditions,[28] and the Court notes that the ALJ did not inquire at the hearing why more aggressive treatment wasn't pursued (assuming such treatment exists). Dkt. 15 at 10–11. A review of the record reveals there may have been strong reasons Plaintiff did not pursue other treatment. "[B]enefits may not be denied to a disabled claimant because of a failure to obtain treatment that the claimant cannot afford." Warre v. Comm'r Soc. Sec. Admin., 439 F.3d 1001, 1006 (9th Cir. 2005). Further, the Ninth Circuit has directed that "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Garrison v. Colvin, 759 F.3d 995, 1018 n.24 (9th Cir. 2014) (internal quotation marks omitted). Leading up to the relevant period, and during, Plaintiff indicated she couldn't afford certain treatments and medications. See, e.g., AR at 257 ("Could not afford [medication Plaintiff took in past] due to cost."), 280 (requesting alternative medication because prescription was "too expensive"), 291 (treatment note

---

[28] Plaintiff testified, and counsel argued, that her conditions are related. See, e.g., AR at 41, 43–44, 50.

13

indicating Plaintiff will attempt to "get state covered insurance" for next visit), 395 (listing medication as "[i]nactive" because "too expensive"), 403 (treatment note indicating Plaintiff will attempt to "get state covered insurance" for next visit), 422 (medication discontinued because "too expensive"), 422 (same), 427–28 (same). Because the ALJ failed to either ask Plaintiff at the hearing or consider this possible explanation readily borne out in the record, faulting her for failing to seek more treatment was improper. See Social Security Ruling ("SSR") 16-3p, 2016 WL 1119029, at *8 ("We will not find an individual's symptoms inconsistent with the evidence in the record . . . without considering possible reasons he or she may not comply with treatment or seek treatment consistent with the degree of his or her complaints."); Surman v. Comm'r Soc. Sec. Admin., 2018 WL 3491667, at *6 (C.D. Cal. July 19, 2018) (ALJ erred by discounting claimant's subjective allegations in part because there was no indication ALJ considered claimant's explanation that his insurance did not cover psychological treatment, counseling, or therapy)).

Therefore, the ALJ's reasoning that Plaintiff's subjective complaints were inconsistent with her treatment does not constitute a "specific, clear, and convincing reason" for discounting her testimony.

### b. Symptom control

The ALJ next noted that Plaintiff had been prescribed and taken "appropriate medications . . . which would normally weigh somewhat in [her] favor," but nonetheless discounted her subjective complaints because the medications had "been generally successful in controlling those symptoms." AR at 21.

While "[i]mpairments that can be controlled effectively with medication are not disabling," Warre, 439 F.3d at 1006, neither of the supporting examples cited by the ALJ are clear or convincing. In the first example, the ALJ stated that Plaintiff "was noted to have ulcerative colitis without complications (Ex. 2F, p. 58 [AR at 356]) and she was not taking any medication (Ex. 11 F, p. 1 [AR at 617])." AR at 21. The cited September 26, 2016 treatment note indicating Plaintiff temporarily displayed

"[u]lcerative colitis without complications" (AR at 356) seems to have little connection with the cited June 13, 2017 note—nearly ten (10) months later—indicating "no medication" (AR at 617). Moreover, the June 2017 note is unclear. It is terse and not very legible, and it is uncertain whether "no medication" meant Plaintiff was not prescribed additional medication, or was not taking medication at that time. AR at 617. Moreover, the note indicated that, despite the lack of further rectal bleeding at the time, the doctor diagnosed her with "ulcerative colitis" and ordered a colonoscopy. Id. Due to the tenuous chronological connection between treatment notes, and the lack of clarity regarding the second note, the ALJ's example of controlled colitis is not a "clear" reason to discount Plaintiff's subjective complaints.

In the second example, regarding Plaintiff's mental conditions, the ALJ cited an October 2013 progress note indicating her depression and anxiety were stable,[29] and a February 2014 progress note indicating her anxiety was stable.[30] AR at 21 (citing AR at 287, 293). Citation to two (2) progress notes is simply not a "convincing" reason to discount Plaintiff's subjective complaints regarding her mental health for the whole of the alleged disability period, spanning over five-and-a-half (5.5) years from May 2012 to December 2017—particularly because mental impairments notoriously fluctuate. See Garrison, 759 F.3d at 1017 ("As we have emphasized while discussing mental health issues, it is error to reject a claimant's testimony merely because symptoms wax and wane in the course of treatment. Cycles of improvement and debilitating symptoms are a common occurrence . . .."); see also Indiana v. Edwards, 554 U.S. 164, 175 (2008) ("Mental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways."). This is particularly true here, where Plaintiff was prescribed and

---

[29] Notably, despite finding Plaintiff "stable on current medication," in addition to continuing her with Xanax (alprazolam), the doctor added WellButrin, reporting that Plaintiff showed "evidence of [d]istress" because she was crying during the visit. AR at 286–87.

[30] Plaintiff was no longer taking Xanax or WellButrin by this visit, but instead she was taking citalopram. AR at 292. Despite finding Plaintiff "stable," in addition to continuing citalopram, the doctor re-prescribed Xanax. Id. at 292–93.

15

switched between so many psychotropic medications through the years (as evidenced by the extensive list above) because she was unresponsive to many of them at different times. See, e.g., AR at 231, 286–87 (10/17 continuing with Xanax and adding Wellbutrin), 292–93 (2/14 no longer taking Wellbutrin or Xanax, re-prescribing Xanax and continuing citalopram), 361 (5/17 relieved with "none"), 363 (8/17 not relieved with Lexapro or Prozac), 366 (10/17 not relieved with Lexapro, Prozac, and clonazepam), 368 (11/17 same), 370 (5/18 same), 501 (did not start Prozac due to concerns about side effects), 502 (6/14 not relieved with Zoloft or citalopram), 520 (9/16 noting side effects with gabapentin), 521 (4/17 relieved with Lexapro in past, but stopped taking when it aggravated symptoms), 527 (8/17 not relieved with Lexapro or Prozac), 530 (10/17 not relieved with Lexapro, Prozac, or clonazepam), 532 (11/17 same), 534 (5/18 same). And as a result, doctors advised Plaintiff to pursue disability due to the severity of her symptoms, which hardly bespeaks of a controlled condition. See id. at 247, 554, 581, 643.

Therefore, the ALJ's reasoning that Plaintiff's subjective allegations were diminished in persuasiveness because her symptoms were controlled[31] does not constitute a "specific, clear, and convincing reason" for discounting her testimony.

///
///
///

### c. Lack of objective medical support

The only other rationale offered by the ALJ was Plaintiff's testimony was not substantiated by, and was inconsistent with, the objective medical evidence.[32] AR at

---

[31] The Court seriously questions whether Plaintiff's symptoms were controlled at all during by during the initial portion of the relevant period considering her treatment with prednisone—as Plaintiff testified at the hearing and appears to be supported by the record—caused her strokes, which in turn caused further physical and mental problems. AR at 42–43, 325, 327, 342, 501–02.

[32] Plaintiff presents briefing regarding the impermissibility of reliance on daily activities that are not readily transferable to the work environment. Dkt. 15 at 9. The Court does not address this factor because the ALJ did not rely on it. See Garrison, 759 F.3d at 1010 (district court's review is limited to only grounds relied upon by ALJ).

16

20. This alone is not a sufficient basis to support the determination. See Burch v. Barnhart, 400 F.3d 676, 681 (9th Cir. 2005) (lack of objective medical evidence to support subjective symptom allegations cannot form the sole basis for discounting pain testimony); Rollins v. Massanari, 261 F.3d 853, 856–57 (9th Cir. 2001); Dschaak v. Astrue, 2011 WL 4498835, at *1 (D. Or. Sept. 27, 2011) ("[O]nce the[] other bases for the ALJ's decision were discarded as erroneous, the ALJ's [adverse subjective testimony] determination could not rely solely on conflicts with the medical evidence.").

As such, even if the ALJ's construction of the remainder of the medical record was fair, lack of medical evidence supporting Plaintiff's testimony, alone, would not be a proper basis for rejecting her subjective complaints. Thus, the ALJ's final purported reason does not constitute a "specific, clear, and convincing reason" for discounting the testimony.

### 4. Harmlessness

Finally, the ALJ's error in rejecting Plaintiff's subjective complaints is not harmless. A decision of the ALJ will not be reversed for errors that are harmless. Stout v. Comm'r of Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006) (citing Burch, 400 F.3d at 679). However, a reviewing court cannot consider an error harmless "unless it can confidently conclude that no reasonable ALJ . . . could have reached a different disability determination." Id. at 1056. In other words, legal errors are harmless only if they are inconsequential to the non-disability decision. Id. at 1055.

Here, the ALJ's opinion that Plaintiff could work and was not disabled necessarily relied on the ALJ's rejection of Plaintiff's allegations regarding the limiting effect of her impairments. Therefore, the Court cannot find the ALJ's improper analysis of Plaintiff's subjective complaints harmless error. See Brown-Hunter, 806 F.3d at 492–93 (ALJ's failure adequately to specify reasons for discounting claimant testimony "will usually not be harmless").

# VIII.
# **RELIEF**

## A. APPLICABLE LAW

"When an ALJ's denial of benefits is not supported by the record, 'the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation.'" Hill, 698 F.3d at 1162 (citation omitted). "We may exercise our discretion and direct an award of benefits 'where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed.'" Id. (citation omitted). "Remand for further proceedings is appropriate where there are outstanding issues that must be resolved before a determination can be made, and it is not clear from the record that the ALJ would be required to find the claimant disabled if all the evidence were properly evaluated." Id.; see also Reddick, 157 F.3d at 729 ("We do not remand this case for further proceedings because it is clear from the administrative record that [c]laimant is entitled to benefits.").

## B. ANALYSIS

Here, remand for further proceedings is warranted. The ALJ's assessment of the hearing testimony is intertwined with other issues raised in the Joint Stipulation, including his consideration of medical evidence and ultimately the fashioning of the RFC. Moreover, remand will provide Plaintiff an opportunity to explain whether more aggressive treatment was was available, and, if so, why it was not pursued. See Hiler v. Astrue, 687 F.3d 1208, 1212 (9th Cir. 2012) ("Because we remand the case to the ALJ for the reasons stated, we decline to reach [plaintiff's] alternative ground for remand."); Augustine ex rel. Ramirez v. Astrue, 536 F. Supp. 2d 1147, 1153 n.7 (C.D. Cal. 2008) ("[The] Court need not address the other claims plaintiff raises, none of which would provide plaintiff with any further relief than granted, and all of which can be addressed on remand."); see also Vaughn v. Berryhill, 242 F. Supp. 3d 998, 1010 (E.D. Cal. 2017) (dispensing of exhaustive analysis of plaintiff's remaining issues

because "[t]he ALJ's . . . evaluations of [p]laintiff's [testimony] . . . are inescapably linked to conclusions regarding the medical evidence"). Because it is unclear, considering these issues, whether Plaintiff is in fact disabled, remand here is on an "open record." See Brown-Hunter, 806 F.3d at 495; Bunnell v. Barnhart, 336 F.3d 1112, 1115–16 (9th Cir. 2003). The parties may freely take up all issues raised in the Joint Stipulation, and any other issues relevant to resolving Plaintiff's claim of disability, before the ALJ.

## IX.
## CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that judgment be entered **REVERSING** the decision of the Commissioner and **REMANDING** this action for further proceedings consistent with this Order. **IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment on counsel for both parties.

Dated: October 6, 2021

HONORABLE MARGO A. ROCCONI
United States Magistrate Judge